UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRAMMELL CROW RESIDENTIAL COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:10-CV-2163-B |
| AMERICAN PROTECTION INSURANCE COMPANY and OLD REPUBLIC INSURANCE COMPANY, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant American Protection Insurance Company's Motion for Summary Judgment (doc. 24), filed December 12, 2011, and Plaintiff Trammell Crow Residential Company's Motion for Partial Summary Judgment (doc. 28), filed December 16, 2011. For the reasons set forth below, American Protection Insurance Company's motion for summary judgment is **GRANTED**, and Trammell Crow Residential Company's motion for summary judgment is **DENIED**.

## I.

## BACKGROUND

This action involves insurance policies issued to Plaintiff Trammell Crow Residential Company ("Trammell Crow") by Defendant American Protection Insurance Company ("APIC"), Defendant Old Republic Insurance Company ("Old Republic"), and non-party Virginia Surety

Insurance Company, Inc. ("Virginia Surety"). Doc. 1-1, Pet. at 2-3. In 2002, Trammell Crow faced

litigation by residents of its multi-unit residential complex in Colorado ("the Colorado Action"). *Id.*

at 2. Virginia Surety defended Trammell Crow. *Id.* at 3. Following settlement, Trammell Crow and

its insurers filed a second lawsuit ("the Insurance Action") asserting a series of claims, counterclaims,

and third-party claims regarding the insurers' respective duties to defend Trammell Crow and

indemnify Virginia Surety. *Id.* at 3-4. Now before the Court is the issue of which party pays for

Defendants' defense costs accumulated during the Insurance Action. The facts are outlined in detail,

below.

A.      *Colorado Action*

        Trammell Crow operated a number of residential complexes in Colorado that developed a

mold problem and led to residents' alleged personal injury and property damage. In 2002, the

residents filed a lawsuit against Trammell Crow and its affiliates in Colorado, *Angel Adams et al. v.

Trammell Crow Residential Servs. et al.*, No. 02-CV-4419 (Dist. Ct. Div. 5, Arapahoe Cnty., Colo.).

Trammell Crow had an insurance policy with Virginia Surety, No. IPGA7000000020056 (the

"Virginia Surety Policy"), and elected Virginia Surety as its defender in the Colorado Action.

Trammell Crow also had insurance policies with APIC, No. 5AF 002 082-00 (the "APIC Policy"),

and with Old Republic, No. MWZY55478 (the "Old Republic Policy"). *Id.* at 1. APIC and Old

Republic were notified of the Colorado Action but submitted letters declining the right to defend

Trammell Crow. Virginia Surety thus provided Trammell Crow's sole defense in the Colorado

Action. *Id.* at 3. Trammell Crow ultimately settled with the Colorado plaintiffs. Virginia Surety paid

some of the defense and settlement costs, while Trammell Crow footed the remaining portions of the

settlement awards. *Id.*

Trammell Crow's payments were submitted to a third-party administrator, Broadspire Services, Inc. ("Broadspire"), which is a division of Crawford & Company. Doc. 29, Trammell Crow Br. at 3-4. Broadspire maintains an escrow account on Trammell Crow's behalf (the "Broadspire account"). *Id.* at 4. According to Trammell Crow's petition, the account was created "for the purpose of paying Trammell Crow's deductible/insured retention in relation to any covered loss and/or expense" under its various insurance policies. Doc. 1-1, Pet. at 8.

B.    *Insurance Action*

Following settlement in the Colorado Action, Trammell Crow filed a lawsuit against Virginia Surety for breach of their insurance agreement and other violations of Texas insurance law, *Trammell Crow Residential Servs. v. Virginia Surety Ins. Co.*, No. 3:08-CV-685-B (N.D. Tex.). Doc. 29 Br. at 4. Trammell Crow sought reimbursement from Virginia Surety for the amounts it paid in settlement awards in the Colorado Action. *Id.* Virginia Surety filed a counterclaim against Trammell Crow, contending that Trammell Crow misrepresented its policies with APIC and Old Republic, and sought contribution from Trammell Crow for portions of the defense costs and settlements that Virginia Surety paid in the Colorado Action. Doc. 25, APIC Br. at 7. Virginia Surety then filed a third-party complaint against APIC and Old Republic, arguing that those insurers were obligated to participate pro rata in the defense and indemnity of Trammell Crow in the Colorado Action. *Id.* Virginia Surety also sought equitable subrogation from APIC and Old Republic to the extent that it was deemed liable for the claims asserted against it by Trammell Crow. *Id.*

The parties filed cross-motions for summary judgment. This Court held that APIC did not have a duty to defend Trammell Crow in the Colorado Action, in pertinent part because APIC's policy provided only a right and not a duty to defend, which APIC did not exercise. Doc. 25-1, App.

at 16 (Order). The Court also determined that APIC did not have a duty to indemnify Virginia Surety, because the APIC Policy contained a deductible that Trammell Crow had not met. Doc. 25-1, App. at 17 (Order). Finally, the Court held that Virginia Surety's claim for equitable subrogation from APIC failed, given that APIC had no right or duty to defend and given that Trammell Crow had no indemnity cause of action against APIC. Doc. 25-1, App. at 18 (Order). Old Republic and Trammell Crow were successful on several of their claims against Virginia Surety as well. The parties settled their remaining claims.

     C.     *The Instant Action*

APIC and Old Republic were represented by separate counsel in the Insurance Action. Doc. 29, Br. at 5. Following the completion of that action, both Defendants submitted invoices to Broadspire for payment from Trammell Crow's Broadspire account. *Id.* The invoices specifically sought reimbursement for the costs and fees that Defendants expended in defending against Virginia Surety's third-party claims in the Insurance Action. *Id.* Defendants surmised that their respective policies entitled them to payment from Trammell Crow for the Insurance Action defense costs. Doc. 25, Br. at 8.

The parties dispute whether and when Broadspire or Crawford & Company paid Defendants' invoices. They also dispute how much Defendants received from the Broadspire account. According to APIC, Broadspire paid a portion of APIC's invoices and then sought approval from Trammell Crow for the remaining payments. *Id.* Trammell Crow initially consented, but later objected. Given the dispute, APIC maintains that it returned all monies received from the Broadspire account back to Broadspire and paid its defense attorneys from its own funds. *Id.* Trammell Crow asserts that it was not aware that APIC returned the money to the Broadspire account, because Trammell Crow has

not personally received any of those funds from Broadspire. Doc. 29, Br. at 6. Trammell Crow insists that at least $255,000.00 of its funds were taken from the Broadspire account by Defendants collectively. *Id.*; Doc. 30-1, App. at 4 (Woodward Aff.). Finally, Trammell Crow alleges that APIC funded some of its costs directly from Trammell Crow's letter of credit and has not returned that money. *Id.*; Doc. 33, Trammell Crow Resp. Br. at 5. There is a similar disagreement between Trammell Crow and Old Republic.

Trammell Crow filed the instant action against Defendants, seeking return of the funds it declares were wrongfully taken directly from it or the Broadspire account to pay for Defendants' defense costs from the Insurance Action. Doc. 1-1, Pet. Trammell Crow raises eight causes of action: a declaratory judgment requesting, inter alia, that the Court conclude that Defendants are obligated to return the funds taken from Trammell Crow to fund their defense costs; breach of contract; conversion; unjust enrichment; money had and received; violations of Chapters 541.051 and 41.061 of the Texas Insurance Code for various misrepresentations and omissions; tortious interference with Trammell Crow's business relationship with Broadspire; and attorney's fees. *Id.* Defendants individually filed counterclaims against Trammell Crow for breach of contract, unjust enrichment, and attorney's fees. Doc. 6, APIC Answer at 4-6.

The parties conducted discovery and have submitted summary judgment evidence to this Court including, *inter alia*, an affidavit and the deposition testimony of Scott James Woodward, Trammell Crow's Risk Manager; an affidavit of Barbara Davis, Manager of CD and Excess for APIC's superior, Lumbermens Mutual Group ("Lumbermens"); Defendants' answers to interrogatories; images of reimbursement checks from APIC to Broadspire; the insurance policies; and this Court's prior orders.

APIC filed a Motion for Summary Judgment (doc. 24) on December 12, 2011 for judgment on its counterclaims for breach of contract and attorney's fees and on all of Trammell Crow's claims. Trammell Crow filed a Motion for Partial Summary Judgment (doc. 28) on December 16, 2011 for judgment on its claims for declaratory judgment, conversion, unjust enrichment, and money had and received and on APIC's counterclaims. The summary judgment issues between Trammell Crow and Old Republic are addressed in a separate order. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

## II.

## LEGAL STANDARDS

A.  *Summary Judgment Standard*

Summary judgment is appropriate when the pleadings and record evidence, taken as a whole, show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment must be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). To meet this burden, the movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue

of material fact." *Celotex*, 477 U.S. at 323(internal quotation marks omitted). Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . .by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (internal citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). A non-movant may not simply rely on the Court to sift through the summary judgment record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The non-moving party thus must show that the evidence is sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). The Court will not make credibility determinations, weigh the evidence, or draw inferences but instead confine its inquiry to facts material under the governing legal standard. *Anderson*, 477 U.S. at 255.

B.    *Choice of Law and Interpretation of Contracts*

Before addressing the merits of the parties' motions for summary judgment, the Court must determine which state's law to apply in interpreting the insurance agreement. District courts sitting in diversity, such as this one, follow the choice-of-law rules applied by the forum state. *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004). Under Texas law, "contractual choice-of-law provisions are typically enforced." *Smith*, 393 F.3d at 597; *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003). The APIC Policy follows Texas law, Doc. 30-2, Ex. A-1, and the parties

cite Texas cases throughout their briefing. As the parties appear to have acquiesced in the application of Texas law, the Court will analyze the APIC Policy under Texas legal principles.

C.       *Texas Rules of Contract Interpretation*

Under Texas law, insurance policies are controlled by the same rules of construction that apply to contracts generally. *See Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740-41 (Tex. 1998). In construing an insurance contract, the primary goal is to "ascertain the true intent of the parties as expressed in the instrument" and to give effect to that intent. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Balandran*, 972 S.W.2d at 741. "The terms used in an insurance policy are to be given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996); *Colum. Cas. Co. v. Ga. & Fla. Railnet Inc.*, 542 F.3d 106, 112 (5th Cir. 2008). The plain meaning of unambiguous terms of a contract prevail. *See Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co., Inc.*, 112 F.3d 184, 186 (5th Cir. 1997); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A term is ambiguous if it is susceptible to more than one reasonable interpretation. *See CBI Indus.*, 907 S.W.2d at 520. The determination of whether a term is ambiguous is a legal question. *D.E.W., Inc. v. Local 93, Laborers' Int'l Union of N. Am.*, 957 F.2d 196, 199 (5th Cir. 1992); *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010). "If a policy provision is ambiguous, the court must adopt the insured's construction of the provision, 'as long as that construction is not unreasonable, even if the construction urged by the insurer appears more reasonable or a more accurate reflection of the parties' intent.'" *Lubbock Cnty. Hosp. Dist. v. Nat'l Union Fire Ins. Co.*, 143 F.3d 239, 242 (5th Cir. 1998) (quoting *Nat'l Hudson Union Fire Ins. Co. v. Hudson Energy Co.*, 811

S.W.2d 552, 555 (Tex. 1991)). The policy should be considered as a whole so as to give each part effect and avoid rendering any portion superfluous. *Colum. Cas.*, 542 F.3d at 112-13; *Balandran*, 972 S.W.2d at 741.

## III.

## ANALYSIS

A.    *Overarching Issues*

The parties' claims and counterclaims involve the extent of Trammell Crow's obligation–if any–to contribute to Defendants' costs of defense against Virginia Surety's third-party claims in the Insurance Action. The analysis of each of these claims requires the reconciliation of three predominant issues. In the interest of judicial efficiency, the Court will first address the overarching issues and then apply its conclusions to the analysis of each claim.

i.    *Party Damages*

Although Trammell Crow and APIC cross-aver that there are no genuine issues of material fact and seek summary judgment, they do in fact dispute the material facts related to whether and to what extent either of them has sustained damages. *See Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1069-70 (5th Cir. 1993) (finding a genuine issue of fact of the existence of damages stemming from a breach of contract); *Chesapeake Operating, Inc. v. Glencrest Res., LLC*, No. 3:10-cv-1573, 2011 U.S. Dist. LEXIS 124410, at *6-8 (N.D. Tex. Oct. 26, 2011) (denying summary judgment due to a dispute of fact as to the existence of damages). Each party claims that it has sustained damages, and each party disclaims that the other sustained any damages. In short, Trammell Crow asserts in its petition and moves for summary judgment on its claims that it has been damaged by APIC because APIC took funds from Trammell Crow's Broadspire account as well as

Trammell Crow's letter of credit to pay for APIC's defense costs. APIC states in its answer and moves for summary judgment on its claims that it has been damaged by Trammell Crow because it repaid all monies received back to the Broadspire account prior to the filing of this action and therefore is still owed money to pay for its defense costs. Doc. 25, APIC Br. at 12–16. Trammell Crow additionally moves for summary judgment on APIC's counterclaims, arguing that APIC has not been damaged. APIC seeks summary judgment on Trammell Crow's claims, asserting that because APIC repaid the funds to the Broadspire account, Trammell Crow has not been damaged.

Both APIC and Trammell Crow submit the deposition testimony of Trammell Crow's representative Woodward as summary judgment evidence. APIC also presents copies of two checks issued by it. Woodward's deposition testimony transcript shows that Woodward reviewed two checks from APIC to Broadspire allegedly returning the full amount received by APIC from the Broadspire account. Woodward admitted in his deposition that the checks appeared to have been negotiated. Doc. 25, APIC Mot. at 12–16 (citing Doc.25-1, App. at 86, 105 (Woodward Dep.)). The summary judgment record includes copies of a check issued by APIC's superior, Lumbermens, on August 11, 2010 and paid to Broadspire c/o Crawford & Company on August 18, 2012 in the amount of $53,230.90. Doc 25-2, App. at 12. The record also includes a second check issued by Lumbermens on October 27, 2010 and paid to Broadspire c/o Crawford & Company on November 23, 2010 in the amount of $98,371.28. Doc 25-2, App. at 11. APIC alleges that the checks represent refunds from APIC to Broadspire for the full amount that Broadspire originally issued to APIC as payment for APIC's invoices. APIC also asserts that, after returning the funds to Broadspire, APIC paid its defense costs from its own account.

In the face of this proof by APIC that the checks were submitted and negotiated to Broadspire, Trammell Crow attempts to raise a dispute of fact as to whether APIC repaid the funds by alleging that, if APIC returned the money it received from the Broadspire account, Trammell Crow had no prior knowledge of that transaction. Trammell Crow also states that it has not yet received that refund from Broadspire or Crawford & Company and thus continues to sustain damages. Doc. 33, Pl.'s Resp. at 6. Absent a claim by Trammell Crow against APIC for vicariously liability, APIC cannot otherwise be held liable for Crawford & Company's alleged failure to fulfill any obligations Crawford & Company might have to return to Trammell Crow the money returned to the Broadspire account. Trammell Crow fails to point the Court to actual evidence to demonstrate a dispute of fact as to whether APIC returned the Broadspire account funds. Trammell Crow also has not directed the Court to evidence sufficient to raise a dispute of fact as to whether the checks represent the full amount that APIC received from the Broadspire account. *See Ragas*, 136 F.3d at 458. The Court thus concludes from the uncontroverted summary judgment record that APIC has supported its claim that it returned the funds received from the Broadspire account. As such, Trammell Crow cannot establish that it sustained damages from the funds initially paid to APIC from the Broadspire account. APIC has also supported its claim that it has been damaged in that it returned the money to the Broadspire account and thus is still owed reimbursement by Trammell Crow for its defense costs.

Not only does Trammell Crow take the position that it was damaged by APIC's withdrawal of funds from the Broadspire account, as mentioned above, Trammell Crow also argues that it sustained damages when APIC drew funds directly from Trammell Crow's letter of credit to pay for the defense costs. Doc. 33, Trammell Crow Resp. Br. at 5. Trammell Crow provides the Court with

APIC's answers to its first set of interrogatories as summary judgment evidence. Doc. 30-9, App. at 484 (Ex. E, APIC's Answers to Interrogatories). In its answers, APIC admits that it directly withdrew $31,516.00 from Trammell Crow's letter of credit to pay for a portion of APIC's defense costs. *Id.*

APIC unpersuasively attempts to raise a dispute of fact as to its retention of this money by retorting that "Trammell Crow has not claimed a right to damages in this lawsuit based on payments other than those made by Broadspire." Doc. 43, APIC Reply Br. at 3. APIC cites only its own brief in support. *Id.* Despite the forgoing argument in its brief, APIC submits no evidence in the summary judgment record to controvert that it withdrew and has retained $31,516.00 directly from Trammell Crow. The Court's review of Trammell Crow's original petition does not limit it to seeking damages solely on the basis of funds taken from the Broadspire account.[1] Doc. 1-1, Pet. APIC has failed to demonstrate a dispute of this fact as presented by Trammell Crow. *See Ragas*, 136 F.3d at 458. Accordingly, the Court concludes from the summary judgment record that there is no genuine dispute of fact that Trammell Crow has supported its claim for damages in the amount of $31,516.00.

### ii.    *The Deductible*

The APIC Policy's section on "Allocation of Costs of Defense, Investigation and Settlement" provides that the insured must pay for all "damages" and "claim expense" that arise from a claim or suit that do not exceed the deductible amount of $250,000 per occurrence. Doc. 25-2, App. at 165 (APIC Policy). APIC pays for all "damages" or "claim expense" that exceed the $250,000 per

---

[1]Several of the claims in Trammell Crow's Original Petition, doc. 1-1, refer only to APIC's alleged misuse of the Broadspire funds, but other portions of the petition refer to damage from collateral sources used by APIC to pay its defense costs.

occurrence deductible. *Id.* Resolution of the issues on summary judgment depends upon whether Trammell Crow's costs in the Colorado Action exceeded its deductible under the APIC Policy.

Both parties point the Court to the APIC Policy and this Court's prior order in the Insurance Action as summary judgment evidence. This Court determined in its prior order that "Trammell Crow has not met the APIC deductible." Doc. 25-1, App. at 17 (Order) (reiterating that "the APIC deductible was not met"). That decision was based in part on the fact that "the Colorado Action most assuredly gave rise to at least four separate occurrences." *Id.* The Court also considered Trammell Crow's own tracking records, which indicated that the Colorado Action "involved eleven separate occurrences." *Id.*

Trammell Crow argues that the prior order did not decide whether Trammell Crow met the APIC deductible, but merely established that the number of occurrences, and therefore separate deductibles, that Trammell Crow must meet was a minimum of four. APIC responds that the Court's prior order definitively determined that Trammell Crow did not meet the APIC deductible and thus that the prior order collaterally estopps Trammell Crow from relitigating the issue.

Trammell Crow seeks to litigate the issue, raising the same facts that were available in the Insurance Action, in an attempt to show that it satisfied its deductible and thus is entitled to reimbursement from APIC for any amount that Trammell Crow paid in the Colorado Action that exceeded the deductible. Doc. 29, Br. at 14-16. Trammell Crow contends that it or Virginia Surety incurred over $1.3 million in defense costs in addition to over $600,000 in settlement payments in the Colorado Action. *Id.* It argues that the Colorado Action involved five occurrences, and with each occurrence requiring a $250,000 deductible, the total deductible allegedly would be $1.25 million. *Id.* Under this reasoning, Trammell Crow paid in excess of its deductible, APIC must reimburse

Trammell Crow for the amounts paid in excess of the deductible, and APIC would not be entitled to any payment from Trammell Crow.

Collateral estoppel governs whether Trammell Crow is entitled to litigate the issue of the APIC deductible. "Collateral estoppel–or claim preclusion–is applied to bar litigation of [a] claim previously decided in another proceeding by a court of competent jurisdiction . . . ." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 832 (5th Cir. 1998). For the doctrine to apply, "(1) the parties must be identical; (2) the issue to be precluded must be identical to that involved in the prior action; (3) the issue must have been actually litigated; and (4) the determination of the issue in the prior action must have been necessary to the resulting judgment." *In re Keaty*, 397 F.3d 264, 270-71 (5th Cir. 2005).

Trammell Crow fails to explain how the elements of collateral estoppel have not been met. The Court has reviewed the prior order presented by the parties as summary judgment evidence and concludes that it addressed the issue of whether Trammell Crow met the APIC deductible with the payments made by Trammell Crow itself as well as the payments made by Virginia Surety on Trammell Crow's behalf, which eroded the deductible. Doc. 25-1, App. at 16-17 (Order). The issue of whether Trammell Crow met the APIC deductible was actually litigated and decided, and the resolution of the issue was necessary to the Court's determination that APIC did not have a duty to indemnify Virginia Surety for its defense of Trammell Crow in the Colorado Action. *Id.* at 17. Therefore, the Court adheres to its prior order concluding that Trammell Crow did not meet its deductible under the APIC Policy.

*iii.*         *Whether APIC's Defense Costs are "Claim Expenses"*

The Court now turns to the cornerstone issue: whether APIC's defense costs from the Insurance Action are "claim expenses" identified as Trammell Crow's responsibility under the APIC Policy deductible and are thus recoverable by APIC up to the deductible amount.

The parties present the APIC Policy as undisputed summary judgment evidence. The "Deductible Liability Endorsement" of the APIC Policy provides that Trammell Crow is responsible for all payments that are identified in the APIC Policy as falling within the deductible. Doc. 25-2, App. at 164-66 (APIC Policy). The "Deductible Amount" section in the endorsement describes the deductible as applying to "all damages and claim expense for all coverage of this policy." *Id.* at 164. The parties dispute as a matter of law whether APIC's defense costs in the Insurance Action are classified as "claim expenses" and thus fall within the purview of the deductible. A "claim expense" is defined in the APIC Policy in relevant part as:

> all reasonable expenses incurred by the Insured [Trammell Crow] and by us [APIC] in
> 1. investigating an occurrence, offense, claim or "suit",
> 2. defending a "suit",
> 3. pursuing rights of recovery against others, and
> 4. investigating, defending and settling any coverage dispute under this policy.

Doc. 25-2, App. at 165-66 (APIC Policy).

APIC interprets the language of the policy and the definition of "claim expense" as encompassing its own defense costs in the Insurance Action, because the Insurance Action involved a "coverage dispute" over whether APIC was required to indemnify Virginia Surety for payments made on behalf of Trammell Crow in the Colorado Action. APIC claims that the defense costs were

a "reasonable expense" incurred by it in "investigating, defending and settling any coverage dispute under this policy."[2]

Trammell Crow counters that APIC's defense costs do not fall within the scope of the APIC Policy as a matter of law. Trammell Crow points to language in the APIC Policy and argues that "claim expenses" must be incurred "in defense of any 'suit' against the insured," *id.* at 164, or for defense of the "coverage of th[e] policy" in "any suit against the insured." *Id.* at 164-66. The defense costs in the Insurance Action were expended by APIC to defend against a third-party complaint by Virginia Surety seeking contribution, indemnification, and subrogation. Trammell Crow insists that such inter-insurer claims do not constitute "coverage disputes." Under this reasoning, Trammell Crow argues that APIC's defense costs in the Insurance Action cannot be "claim expenses" under the policy such that they trigger Trammell Crow's obligations under the deductible.

APIC responds that this Court already determined in its prior order that the Insurance Action was a "coverage dispute." Doc. 25-1, App. at 5, 13 (Order). It also points to Woodward's alleged admissions in his deposition that Virginia Surety's subrogation claim in the Insurance Action was a coverage dispute.[3] The Insurance Action involved a dispute between APIC and Virginia Surety

---

[2]Trammell Crow contends that the policy applies only to "suits," which is defined in the APIC Policy as a proceeding in which damages "to which this insurance applies are alleged." Doc. 25-2, App. at 189-90. Trammell Crow relies on this Court's prior order concluding that APIC was not liable to Virginia Surety to explain that the APIC insurance policy did not apply to the underlying Colorado Action, and, hence, any defense costs expended in the Insurance Action were not "suits." Doc. 29, Mot. at 10. The Court first clarifies that, under the plain language of the APIC Policy, the deductible is not limited only to "suits" but includes "coverage disputes" generally, *see* doc. 25-2, App. at 165–66, so the limits of the definition of "suit" are irrelevant. In any event, the APIC Policy defines a "suit" as a proceeding in which it is "alleged" that the insurance applies, not merely to cases where a Court "concludes" that the insurance applies.

[3]Trammell Crow objects to APIC's reliance on questions asked of Woodward in his deposition that elicited allegedly unqualified legal opinion and conclusions. Doc. 33, Mot. at 3-4. Because the Court does not rely on the objected-to opinions of Woodward in forming the basis of its opinion, the objections are moot.

as to whether the terms of the APIC Policy covered the Colorado plaintiffs' claims against Trammell Crow and whether the APIC Policy contained provisions preventing it from indemnifying and contributing to Virginia Surety's defense of Trammell Crow. For all these reasons, the Court concludes that the Insurance Action was a "coverage dispute," because there was a "dispute" as to whether the APIC Policy "covered" the claims in the Colorado Action.

Trammell Crow next argues that the mere fact that the Insurance Action was a coverage dispute does not automatically categorize the defense costs therein as "claim expenses." Instead, the issue boils down to whether, under the APIC Policy, the defense costs in a coverage dispute are limited to coverage disputes where the insurer is defending the insured or include cases where the insurer is defending itself or the policy against the insured or the insured's other insurers. Trammell Crow argues that APIC must be defending the insured, which was not the case in the Insurance Action. Trammell Crow explains that APIC took positions in the Insurance Action that were contrary to Trammell Crow's own interests, such as claiming that APIC need not indemnify Virginia Surety because Trammell Crow had not met its APIC deductible. Doc. 33, Resp. at 2. Trammell Crow also contends that Virginia Surety's subrogation claim was brought by Virginia Surety on behalf of Trammell Crow, creating a dispute between insured and insurer, which Trammell Crow contends cannot produce "claim expenses." APIC does not respond in earnest to this narrow issue, but implicitly argues that "claim expenses" include defense costs incurred during disputes between the insured and insurer.[4]

---

[4]APIC emphasizes the fact that the Insurance Action involved a subrogation claim, which APIC apparently assumes is undisputably covered by the policy. Due to this assumption, APIC does not recognize Trammell Crow's more narrow argument that expenses incurred in "coverage disputes" are "claim expenses" only where the insurer defends the insured.

In support of its argument, Trammell Crow points the Court to the deductible endorsement section of the APIC Policy entitled "Limitation of Defense, Investigation, and Settlement Obligations," doc. 25-2, App. at 164 (APIC Policy), which explains that APIC has the right to defend "any 'suit' *against the insured*." *Id.* (emphasis added). Despite Trammell Crow's contention, the policy language explaining that the right to defend applies to suits "against the insured" does not have bearing on the definition of "claim expense," because there is no language in the contract explicitly or implicitly tying the phrase "against the insured" to "coverage disputes" or applying the explanations in the "Limitation of Defense" section of the APIC Policy to the "Allocations of Costs" and "Claim Expense" sections. *Id.* at 164-66. Further, the provision explaining that APIC has the right to defend "suits" against the insured is only one of two rights of the insurer, the second being the right to investigate and settle "claims." *Id.* The term "claim" does not encompass a limitation that the insurer must be defending the insured and would equally apply to describe the Insurance Action. *Id.* Hence, under the APIC Policy, a "claim expense" can be incurred in a coverage dispute regardless of whether the insurer is defending the insured.

Trammell Crow makes one last attempt to avoid liability under the deductible. It again points to the policy definition of "claim expense," which states that the expenses must be "incurred by the Insured *and* by us." Doc. 25-2, App. at 165 (APIC Policy) (emphasis added). Trammell Crow interprets that definition as holding that the defense costs must have been jointly incurred by the insured and the insurer together in order to qualify as a "claim expense." Because the defense costs in the Insurance Action were incurred by APIC only, and not jointly with Trammell Crow, Trammell Crow proclaims that APIC may not recover those costs. APIC responds that the word "and" must

be read in the disjunctive in order for the policy and the parties' intent to be effected. In other words, recoverable expenses are those incurred by the insured and also those incurred by the insurer.

The Fifth Circuit, interpreting Texas law, has held that "the word 'and' is often construed as conjunctive . . . [h]owever, 'and' can be interpreted as disjunctive when the context requires." *In re Velazquez*, 660 F.3d 893, 897-98 (5th Cir. 2011) (citing cases). "One of the recognized uses of 'and' is to refer to 'either or both' of two alternatives, when 'or' might be interpreted as referring to only one or the other." *Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc.*, 778 S.W.2d 492, 502 (Tex. App. 1989). The Court concludes that the APIC Policy, when read as a whole, would be undermined by reading "and" to mean "jointly," rather than reading "and" as "either or both." *See Aerospatiale Helicopter*, 778 S.W.2d at 502; *Lanier v. Spring Cypress Invs.*, No. 01-93-414, 1995 Tex. App. LEXIS 1934, at *9 (Tex. App. Aug. 17, 1995) (defining "and" as "either or both" to prevent a "commercially [un]reasonable" reading of a contract). Indeed, if "and" was read in the manner offered by Trammell Crow, Trammell Crow would never be able to recover the costs of defending itself under an insurance policy where APIC initially waived its right to defend, which appears to be the opposite position taken by Trammell Crow in arguing that its own defense costs applied to and exceeded the deductible and thus should be reimbursed by APIC. The Court concludes that the intent of the parties is effectuated by reading "and" as "either or both." APIC is permitted to recover claim expenses that it incurred on its own.

Accordingly, based on the undisputed summary judgment evidence and the plain language of the APIC Policy, the Court concludes that APIC's defense costs in the Insurance Action are "claim expenses" and are thus recoverable by APIC up to the deductible amount. The Court now

turns to the specific claims and counterclaims raised by the parties and applies its conclusions above to its analysis of each cause of action.

B.      *Breach of Contract Claim and Counterclaim*

Both parties have raised a claim for breach of contract.[5] APIC moves for summary judgment both on its counterclaim for breach of contract and on Trammell Crow's claim for breach of contract. Trammell Crow moves for summary judgment only on APIC's counterclaim. To succeed on summary judgment, each movant must demonstrate that there is no genuine issue of fact as to any of the elements of a breach of contract. Under Texas law, to prevail on a breach of contract claim, a party must establish the following: (1) a valid contract; (2) that it performed or tendered performance; (3) the opposing party breached the contract; and (4) that it was damaged as a result of that breach. *Brown v. Ogbolu*, 331 S.W.3d 530, 535 (Tex. App. 2011). To defeat summary judgment, the opposing party must raise a genuine issue of fact as to at least one of these elements. *See, e.g., BPE,*

---

[5]As an initial matter, Trammell Crow contends that APIC should have raised its breach of contract counterclaim during the Insurance Action. Doc. 33, Trammell Crow Resp. at 13-14. Trammell Crow believes that APIC could have done so by filing a counterclaim against Virginia Surety to retrieve reimbursement for its defense costs in the Insurance Action, and, because it did not, the doctrine of *res judicata* and Federal Rule of Civil Procedure 13 bar the presentation of that claim now. *Id.* Trammell Crow's argument is easily dismissed. First, APIC's claims against Trammell Crow would not have been ripe during the Insurance Action and thus could not have been brought at that time. APIC would not have known whether Trammell Crow would reimburse APIC for its defense costs until after the Insurance Action was completed and after APIC submitted its invoice to Trammell Crow or Crawford & Crawford. Fed. R. Civ. P. 13(a) (counterclaims are compulsory only where the claim exists "at the time of . . . service" in the original action). Second, Trammell Crow's suggestion that APIC should have filed a claim for attorney's fees from Virginia Surety in the Insurance Action is frivolous. A claim for attorney's fees and costs against Virginia Surety is a materially different claim from the breach of contract claim alleged here, so *res judicata* does not apply to bar the breach of contract action. *See Dillard v. Sec. Pac. Brokers, Inc.*, 835 F.2d 607, 608 (5th Cir. 1988) (citing *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1983) and explaining that *res judicata* applies only where "the same cause of action [is] involved in both cases"). And although APIC would likely not have a claim for damages here had it sought and received its defense costs from Virginia Surety in the form of a request for attorney's fees in the Insurance Action, Trammell Crow has pointed the Court to no authority that would require APIC to pursue such a course of action. Accordingly, the Court finds that APIC did not waive its breach of contract counterclaim.

*Event Solutions, Inc. v. G.D. Barri & Assocs., Inc.*, No. H-07-1855, 2009 U.S. Dist. LEXIS 129617 (S.D. Tex. Jan. 9, 2009). The parties do not dispute that they voluntarily entered into a valid insurance agreement. The issues central to this suit concern whether the terms of the policy were breached and whether the parties actually sustained damages.

The Court has already concluded as a matter of law that APIC's defense costs were "claim expenses" and thus fell within the category of costs that Trammell Crow must pay, up to the deductible amount. The Court has also concluded based on the summary judgment record that Trammell Crow did not meet the deductible amount and has not reimbursed APIC in full. Thus, APIC did not breach the contours of the policy by seeking what it was owed under the deductible, but Trammell Crow breached the policy by failing to pay the claim expenses up to its deductible amount. APIC has established that it was damaged by Trammell Crow's breach because it was forced to pay some of its defense costs out-of-pocket. Accordingly, the Court grants summary judgment to APIC on the breach of contract claim and counterclaim. The issue of the extent of APIC's damages will be addressed after further discovery and briefing by the parties.

C.     *Conversion*

Trammell Crow and APIC both move for summary judgment on Trammell Crow's conversion claim. Under Texas common law, "[t]he unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion." *Tifford v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)). "The plaintiff must prove that: (1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff

demanded the property's return; and (4) the defendant refused." *Id.* (citing *Small v. Small*, 216 S.W.3d 872, 877 (Tex. App. 2007)).

The Court has concluded that APIC was entitled to its defense costs as "claim expenses" under the deductible, so the period of time in which APIC held funds from the Broadspire account was not a wrongful exercise of control over those funds. Accordingly, the Court grants summary judgment in favor of APIC on the conversion claim.

D.    *Unjust Enrichment Claim and Counterclaim*

Trammell Crow also claims that APIC was unjustly enriched when it withdrew funds from the Broadspire account to pay for its defense costs. Both parties move for summary judgment. "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). If those elements are proved, the defendant must make restitution of the benefits wrongfully received. *Id.*

In this case, APIC was entitled under the APIC Policy to receive money from the Broadspire account and to withdraw money from Trammell Crow's letter of credit. APIC thus did not obtain those funds by fraud, duress, or some other wrongful action. Moreover, APIC returned the Broadspire funds and therefore was not unjustly enriched in that regard. The Court thereby grants summary judgment to APIC on Trammell Crow's unjust enrichment claim.

APIC also raised a counterclaim against Trammell Crow for unjust enrichment. Although APIC stated in its motion that it seeks summary judgment on all of its counterclaims, doc. 24, Mot. at 1, APIC fails to identify its unjust enrichment counterclaim in its brief. Similarly, Trammell Crow states that it should receive summary judgment on each of the counterclaims, doc. 28, Mot. at 2, but

does not argue why it should receive summary judgment on the unjust enrichment counterclaim. Because the issue has not been briefed, this order does not address APIC's counterclaim.

E.      *Money Had and Received*

Both parties move for summary judgment on Trammell Crow's common law cause of action for money had and received. The theory of recovery for money had and received is "an equitable doctrine designed to prevent unjust enrichment." *Merry Homes, Inc. v. Luc Dao*, 359 S.W.3d 881, 884 (Tex. App. 2012); *Edwards v. Mid-Continent Office Distrib., L.P.*, 252 S.W.3d 833, 836 (Tex. App. 2008). It arises where one party "obtains money that, in equity and good conscience, belongs to another," not necessarily due to any wrongful action of the receiver. *Merry Homes*, 359 S.W.3d at 884.

Because APIC lawfully received the money from the Broadspire account that it was owed from Trammell Crow under the APIC Policy, Trammell Crow's claim for money had and received fails. The Court grants summary judgment in favor of APIC on the money had and received claim.

F.      *Violations of the Texas Insurance Code*

APIC seeks summary judgment on Trammell Crow's claim for violations of Chapters 541.051 and 541.061 of the Texas Insurance Code. Trammell Crow does not seek summary judgment on this claim. Trammell Crow's petition alleges APIC's material misrepresentation of the terms of the APIC Policy and the benefits therein, in violation of Chapter 541.051. Doc. 1-1, Pet. at 8. The petition also alleges APIC's making untrue statements of material fact, making a material misrepresentation of law, and failing to state a material fact necessary to make other statements not misleading, in violation of Chapter 541.061. *Id.*

- 23 -

Both parties provide Woodward's deposition as summary judgment evidence. In the deposition, Woodward stated that most of the alleged misrepresentations or omissions are based on statements made by APIC to Broadspire that the invoices were legitimate claim expenses and that APIC was authorized to collect them. Doc. 25-1, App. at 92-99 (Woodward Dep.). Trammell Crow argues that the defense costs were not claim expenses, but that APIC misrepresented to Broadspire that they were. Naturally, because the Court has determined that the defense costs were claim expenses, Trammell Crow's argument fails.

Woodward's deposition also explains that Crawford & Company made an accounting error under the Broadspire account in that it categorized Virginia Surety's expenses as expenses for the Colorado action. Doc. 25-1, App. at 93-94 (Woodward Dep.). Trammell Crow believes that Crawford & Company's mislabeling of the funds constituted an actionable misrepresentation. APIC responds that it is not liable for any error by Crawford & Company and that Trammell Crow presented no evidence demonstrating that APIC had knowledge of the mislabeling or a duty to correct it. Trammell Crow replies only that Crawford & Company is an agent of APIC, and therefore its errors are APIC's errors. The Court rejects Trammell Crow's argument, since Trammell Crow has not plead agency liability. At this stage of litigation, Trammell Crow must "come forward with specific facts showing that there is a *genuine issue for trial*," *Matsushita Elec.*, 475 U.S. at 587, and must point the Court to specific evidence in the summary judgment record and articulate precisely how that evidence supports the challenged claim. *Ragas*, 136 F.3d at 458. Because Trammell Crow has failed to do so, the Court grants summary judgment to APIC on the Texas Insurance Code claims.

G.    *Tortious Interference with a Business Relationship*

APIC seeks summary judgment on Trammell Crow's claim that APIC tortiously interfered with Trammell Crow's relationship with Broadspire. Trammell Crow does not seek summary judgment on this claim. A common law cause of action for tortious interference with a business relationship is proven by showing "(1) a reasonable probability that the parties would have entered into a contract or relationship; (2) an intentional and malicious act by which the defendant prevented the relationship [from] occurring, with the purpose of harming the plaintiff; (3) lack of privilege or justification of the defendant to do the act; and (4) actual harm or damage resulting from the defendant's interference." *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 128 F. Supp. 2d 988, 1003 n.5 (N.D. Tex. 2001) (citing *Garner v. Corpus Christi Nat'l Bank*, 944 S.W.2d 469 (Tex. App. 1997)); *Mid Plains Reeves, Inc. v. Farmland Indus., Inc.*, 768 S.W.2d 318, 322 (Tex. App. 1989) (citing *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105 (Tex. 1984)).

In this case, Trammell Crow cannot prove the third requirement of tortious interference with a business relationship, because the plain language of the APIC Policy permitted APIC to seek reimbursement for its defense costs from Broadspire out of the Broadspire account. The Court therefore grants summary judgment in favor of APIC on the tortious interference claim.

H.    *Request for Declaratory Judgment*

The Court has concluded that APIC's defense costs were "claim expenses," that APIC's initial receipt of the Broadspire account payments was not wrongful, that Trammell Crow breached the policy by failing to reimburse APIC for costs paid by APIC under the deductible, and that Trammell Crow's claims fail as a matter of law. Consequently, Trammell Crow's request for a declaratory judgment is denied.

I.     *Attorney's Fees*

Trammell Crow seeks attorney's fees for its declaratory judgment action, breach of contract claim, and Texas Insurance Code claims. Because the Court has denied Trammell Crow's requests for relief, attorney's fees are inappropriate and are hereby denied.

APIC's motion for summary judgment also requests attorney's fees on its breach of contract claim, pursuant to Tex. Civil Prac. & Rem. Code § 38.001(8). Texas law requires that a party prevailing on a contract claim receive reasonable attorney's fees in litigating that claim. *See Manon v. Tejas Toyota, Inc.*, 162 S.W.3d 743, 751 (Tex. App. 2005) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998)). Because the Court has granted summary judgment in favor of APIC on its breach of contract counterclaim, an award of reasonable attorney's fees is required. *See id.* The issue of the amount and reasonableness of APIC's attorney's fees will be addressed after further discovery and briefing by the parties.

## IV.

## CONCLUSION

For the reasons stated above, Defendant American Protection Insurance Company's Motion for Summary Judgment (doc. 24) is hereby **GRANTED**. Plaintiff Trammell Crow Residential Company's Motion for Partial Summary Judgment (doc. 28) is hereby **DENIED**.

The only surviving claim is APIC's unjust enrichment claim. Further, the parties are directed to brief the Court on the issues of the extent of actual damages incurred by APIC due to Trammell Crow's breach of the APIC Policy and the reasonable attorney's fees expended by APIC in defense of its breach of contract counterclaim.

SO ORDERED.

SIGNED: September 20, 2012.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE